IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13-03070-01-CR-S-MDH |
| SCOTT DAVID FERRY, | ) ) ) | |
| Defendant. | ) | |

**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant Ferry filed a Motion to Dismiss the Indictment, (Doc. 20), in this case, alleging a violation of his Sixth Amendment right to a speedy trial. On November 12, 2015, the Court held a hearing on this matter. For the reasons set forth below, it is hereby **RECOMMENDED** that Defendant's Motion, (Doc. 20), be **GRANTED**, and that this case be **DISMISSED with prejudice**.

**I.     Background**

On July 24, 2013, the Government filed a one-count Indictment alleging that on March 11, 2013, Defendant used a dangerous and deadly weapon to knowingly assault a prison guard at the United States Medical Center for Federal Prisoners ("USMCFP") in Springfield, Missouri. (Doc. 1.) On the same day, the case was referred to the undersigned and the Court entered an order authorizing temporary transfer of custody on consent of the parties. (*See* Docs. 2 and 3.) At the time of the alleged offense, Defendant was serving a 117-month sentence for another offense and was undergoing mental health treatment in the Federal Bureau of Prisons ("BOP").[1] Additionally, he was housed in a locked unit of the mental health treatment ward at USMFCP.

---

[1] Defendant is currently still serving his 117-month sentence on the other offense.

Generally, only prisoners who have severe mental illnesses are housed in such units at USMCFP. (*See* Doc. 40.)

In May 2015, the special agent assigned to Defendant's case met with the Assistant United States Attorney ("AUSA") assigned to this case on another matter. During the course of that meeting, the agent inquired about the status of Defendant's case. The agent and AUSA then contacted the U.S. Marshals Service and discovered that a form requesting Defendant's transfer was needed in order for Defendant to make an initial appearance and move the case forward. On May 11, 2015, the Government filed a Request of the United States Attorney for Production of Federal Prisoner in the Custody of the United States Pursuant to 18 U.S.C. § 3621(d), which was required in order for Defendant to appear on the Indictment. (*See* Docs. 30-1 and 40.)

The AUSA admitted that he did not make efforts to bring Defendant prior to May 2015 because, based on his history as a state prosecutor and AUSA working exclusively on fraud cases, he mistakenly believed that the BOP would handle the transfer and appearance of Defendant. He stated that he did not inquire into the delay because he also mistakenly believed Defendant was undergoing mental evaluations and, upon the completion of those evaluations, would be transferred for his initial appearance. Additionally, the AUSA stated that, at that time, he had not handled a case involving an individual who was indicted while in BOP custody and who was set to remain in BOP custody. During the hearing, the Court inquired as to whether the Government has in place a mechanism by which it tracks its open and pending cases. The Government stated that the agency does have such a mechanism in place, called Alcatraz, which tracks an attorney's pending cases. Further, there is a process in place wherein AUSAs review their cases with their supervisor every six months. In this case, the Government indicated that

Alcatraz would reflect that the case had generally been indicted and was pending, but would not reflect the specific posture of the case.

On June 2, 2015, Defendant made his first appearance before this Court for arraignment on the Indictment, 22 months and nine days after the Indictment was filed and 26 months and 22 days after the date of the alleged offense. (*See* Doc. 5.) During the time that the Indictment was pending, Defendant was continuously in the custody of the BOP, either at USMCFP or the United States Penitentiary in Atlanta. (*See* Doc. 24.) Defendant did not know the Indictment was pending until after he was brought back to the Western District of Missouri for his arraignment on the Indictment.

In his Motion, Defendant argues that the 22-month delay between the time he was indicted and the time of his initial appearance is a violation of his Sixth Amendment right to a speedy trial. Specifically, Defendant contends that the factors evaluated to determine whether such a violation has occurred weigh in his favor. First, he contends that the 22-month delay is presumptively prejudicial. He next argues that the fact that the Government was negligent weighs in his favor. Third, Defendant contends that, because he did not know he was indicted, he could not have asserted his right sooner. Finally, Defendant argues that while presumptive prejudice combined with the other factors would warrant dismissal of this case, Defendant has also suffered actual prejudice warranting dismissal of the indictment.

As noted, the Government admits that it did not attempt to arrange for the initial appearance of Defendant until May 2015, and concedes that the 22-month delay is presumptively prejudicial. However, it argues that the circumstances here do not weigh in favor of dismissal of the case because: (1) the delay was not so lengthy as to warrant dismissal; (2) the reason for the delay should not weigh so heavily against it; (3) Defendant did not know the charges were

3

pending against him; and (4) Defendant has not suffered actual prejudice. The Government therefore contends that dismissal of the indictment is not warranted. The Court takes up the parties' arguments below.

## II. Violation of the Right to Speedy Trial

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to a speedy trial. U.S. Const. amend. VI; *see Doggett v. United States*, 505 U.S. 647, 651 (1992). This right "attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Shepard*, 462 F.3d 847, 864 (8th Cir. 2006) (quotation omitted). To determine whether a violation of the right to a speedy trial has occurred, the court examines four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. Erenas-Luna*, 560 F.3d 772, 776 (8th Cir. 2009). In balancing these factors, none is "regarded as either a necessary or sufficient condition to the finding of a violation of the right to a speedy trial." *United States v. Richards*, 707 F.2d 995, 997 (8th Cir. 1983). "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

### a. Length of the Delay

With regard to the first *Barker* factor, a defendant must first "trigger" the speedy trial analysis. That is, a defendant "must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *United States v. McGhee*, 532 F.3d 733, 739 (8th Cir. 2008) (quoting *United States v. DeGarmo*, 450 F.3d 360, 364 (8th Cir. 2006)). The Eighth Circuit has concluded that "[a] delay approaching a year may

4

meet the threshold for [a] presumptively prejudicial delay requiring application of the *Barker* factors." *Shepard*, 462 F.3d at 864 (quotation omitted).

Here, the Government concedes that the 22-month delay between the indictment and Defendant's initial appearance in this case is presumptively prejudicial and, thus, triggers analysis of the remaining *Barker* factors. (*See* Doc. 23, p. 5.) As such, the Court will analyze the other factors and concludes that the first factor weighs in favor of Defendant.

### b. Reason for the Delay

The second *Barker* factor considers the reason for the delay and balances "whether the government or the criminal defendant is more to blame." *Erenas-Luna*, 560 F.3d at 777 (quoting *Doggett*, 505 U.S. at 651). An intentional delay by the Government will weigh heavily against it. *Id.* Conversely, a delay due to negligence of the Government will weigh less heavily against it but still be "a considerable factor in the weighing process." *Id.* (quoting *United States v. Walker*, 92 F.3d 714, 717 (8th Cir. 1996). A delay caused by the defense will be weighed against the defendant. *Id.*

In this case, the Government readily admits that it is responsible for the delay, primarily because of the mistaken belief of the AUSA that the BOP would handle the transfer and appearance of Defendant on the Indictment. The AUSA believed Defendant was undergoing psychological or mental evaluations during this period and, upon completion of that process, Defendant would be made available for his initial appearance. This admission alone establishes at least negligence on the part of the Government. However, the Government also admits that it has a review process to go over pending cases with a supervising attorney every six months. During this 22-month period, this case would have come up for review at least three times, possibly four. While the case management system is apparently not so sophisticated as to reflect

5

the exact posture of the case, the Government was aware that the case had been pending for some time during those reviews. But, the Government never looked into the case further by, for example, inquiring into Defendant's status or the progress of any mental health assessment with the BOP. Rather, it appears that this case could have continued to languish indefinitely if not for the case agent, who met with the AUSA on another matter in May 2015 and queried about the status of Defendant's case. Only at that time did the Government take any action to arrange for Defendant's initial appearance. Such oversight goes beyond general negligence. As such, the second *Barker* factor weighs in Defendant's favor.

### c. Defendant's Assertion of his Right to Speedy Trial

The third *Barker* factor considers "whether in due course the defendant asserted his right to a speedy trial." *United States v. Rodriguez-Valencia*, 753 F.3d 801, 807 (8th Cir.) cert. denied, 135 S. Ct. 390 (2014) (quoting *Erenas-Luna*, 560 F.3d at 778). Where the defendant is unaware of the indictment, "he cannot be faulted for failing to assert his right to a speedy trial." *Id.* (citations omitted).

In this case, Defendant was unaware that there were charges pending against him, and so his failure to assert the right to a speedy trial sooner cannot be weighed against him. Therefore, the Court concludes that this factor favors neither party.

### d. Prejudice

The final *Barker* factor considers the prejudice suffered by the defendant as a result of delay. As discussed, the parties agree and the Court has concluded that there is presumptive prejudice. Defendant contends that this presumptive prejudice, combined with the other factors weighing in favor of Defendant, is sufficient to show a violation of the Sixth Amendment and to dismiss the case. Without conceding that argument, Defendant also argues he suffered actual

6

prejudice because his defense has been impaired by the delay.  The Government contends that Defendant must show he suffered actual prejudice, and cannot meet that burden.

Generally, presumptive prejudice alone cannot "carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Rodriguez-Valencia*, 753 F.3d at 808 (quoting *Doggett*, 505 U.S. at 656).  However, "[t]he extent to which a defendant must demonstrate prejudice under this factor depends on the particular circumstances." *Erenas-Luna*, 560 F.3d at 778.  "A showing of actual prejudice is required if the government exercised reasonable diligence in pursuing the defendant;" however, when the Government was negligent, prejudice can be presumed if there was an excessive delay.  *Erenas-Luna*, 560 F.3d at 778–79.  Actual prejudice can be shown in three ways: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) possibility that the accused's defense will be impaired.  *Doggett*, 505 U.S. at 654; *see also Rodriguez-Valencia*, 753 F.3d at 807-08.  "[P]rejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655.

Here, the Court concludes that there is presumptive prejudice.  The Government admits that it was not diligent in pursuing Defendant.  Additionally, it is undisputed that Defendant was in BOP custody at the time he committed the offense, when the Indictment was filed, and for the duration of the time that the Indictment has been pending.  Moreover, at 22-months, the delay was excessive.  *See Erenas-Luna*, 753 F.3d at 780 (concluding that a three-year delay was excessive and explaining that there is no bright-line rule to determine whether a delay is excessive; rather the court should consider length of the delay with the circumstances causing the delay).  As such, the Court concludes that Defendant need not show actual prejudice to show a violation of his constitutional right occurred and the final *Barker* factor weighs heavily in his

7

favor.  *See United States v. Shelton*, 820 F. Supp. 461 (W.D. Mo. 1992) (no showing of actual prejudice required to dismiss the indictment where presumption of prejudice was not rebutted by the Government).

However, assuming *arguendo* that presumptive prejudice did not exist, Defendant has also shown actual prejudice.[2]  It is undisputed that, at the time of the alleged offense, Defendant was undergoing mental health treatment in the BOP and was housed in a locked unit in the mental health ward at USMCFP.  Generally, only prisoners with severe mental illnesses are housed in such units.  As such, Defendant has a plausible mental defense.  However, that defense has been impaired by the significant passage of time between when Defendant was indicted and when he was brought to court for his initial appearance.  Specifically, Defendant argues that, even though there are records discussing his mental health treatment, those records do not address the necessary factors analyzed for a mental evaluation under 18 U.S.C. § 4241, which determines a defendant's competency to stand trial, or 18 U.S.C. § 4242, which determines the existence of insanity at the time of an offense.  The Court agrees.  While the Government contends that an evaluation at this point would not necessarily impair Defendant's defense, it seems more likely than not that a mental evaluation conducted at this time would be considered attenuated or less reliable and could be used against Defendant for that reason.  If Defendant had timely made an initial appearance, mental evaluations could have been conducted shortly thereafter and Defendant would have been at fault for any delay in seeking such evaluations.  However, because the alleged offense occurred nearly two and a half years ago, such an evaluation at this point would likely be less reliable and contested by the Government on that basis.  This impairment to Defendant's case shows that he suffered actual prejudice and that the

---

[2] For this matter, the Court need only analyze the possibility that Defendant's defense will be impaired because Defendant was already serving a sentence in BOP custody and did not know the Indictment was pending against him.  Thus, the first two ways to show prejudice are not applicable here.

8

final *Barker* factor weighs heavily in his favor. Thus, based on the foregoing analysis, the Court concludes that Defendant has suffered a violation of his Sixth Amendment right to a speedy trial.

### III.     Dismissal of the Indictment

Because three of the four *Barker* factors weigh in Defendant's favor and thus establish a violation of Sixth Amendment right to a speedy trial, the Court must next analyze the appropriate remedy. As noted, the Government contends that dismissal is not warranted. Conversely, Defendant asserts that dismissal of this case, presumably with prejudice, is the only adequate remedy. The Court takes up these matters below.

In support of its position, the Government argues that the circumstances in this case are similar to those in *United States v. Koory*, 20 F.3d 844 (8th Cir. 1994). In that case, a Nebraska state prosecutor was appointed to be a Special Assistant United States Attorney ("SAUSA") to handle the prosecution of certain offenses that originated from state investigations. *Id.* The SAUSA served primarily as a state prosecutor and did not have "day-to-day familiarity" with federal law. *Id.* at 848. As a result of this unfamiliarity, the defendant in *Koory* did not make an initial appearance for the offense charged until 59 days after the Speedy Trial Act, 18 U.S.C. § 3161(c), required. *Id.* at 846. The case did not involve any alleged violation of the Sixth Amendment right to speedy trial. The district court granted a motion to dismiss the original indictment for a violation of the Speedy Trial Act without prejudice, noting that the Government's negligence "stemmed from genuine confusion over the differences between [the state] speedy trial law and federal speedy trial law." *Id.* at 848. The Government then filed a second indictment, which the defendant also moved to dismiss. The district court denied the motion to dismiss the second indictment because the defendant did not show a violation of the

9

Speedy Trial Act on that Indictment. The Eighth Circuit agreed with the district court's reasoning and affirmed the lower court's decision.

The *Koory* case is distinguishable from the current circumstances for a number of reasons. First, unlike the SAUSA in *Koory*, the AUSA in this case was experienced with federal law and has been a regular employee of the United States Attorney's office for several years. *Cf. id.* at 848 (finding no clear error in the district court's consideration of "the fact that the Special AUSA, who was not a regular employee of the United States Attorney's office, had day-to-day familiarity with Nebraska law, not federal law[.]"). Second, this case, unlike *Koory*, involves a violation of Defendant's constitutional right, rather than a violation of the Speedy Trial Act. Third, the delay between the indictment and the defendant's appearance in *Koory* was 129 days, 59 days outside the 70-day deadline set in the Speedy Trial Act. Here, there was a significantly longer delay of 22 months between the date when Defendant was indicted and when he made his initial appearance. Given these differences, the Court concludes that this case is not so analogous as to avoid dismissal.

The Government also contends that, because there is a five-year statute of limitations on the offense charged, Defendant could have been indicted for this offense at a much later date, even after the 22-month period that has already passed. However, there are constitutional considerations for pre-indictment delays. *See United States v. Lovasco*, 431 U.S. 783 (1977). Additionally, whether a violation of the constitutional right to a speedy trial occurred post-indictment is not determined by what the Government could have done. Instead, the Court looks to what the Government did; that is, when the Indictment was filed and when Defendant first appeared. *See Shepard*, 462 F.3d at 864 (The right to a speedy trial under the Sixth Amendment "attaches at the time of arrest or indictment, whichever comes first, and continues until the trial

10

commences.") (quotation omitted). As discussed in detail above, the circumstances in this case lead the Court to conclude a violation of Defendant's right to a speedy trial occurred. The Government also seemed to suggest that dismissal is not warranted given the seriousness of the offense. (*See* Doc. 40, p. 20.) The reprehensible nature of the offense, however, is not a factor the Court must consider in determining whether a violation of Defendant's constitutional rights occurred or whether to dismiss the case. *See Barker*, 407 U.S. at 530; *Erenas-Luna*, 560 F.3d at 776.[3]

Courts have within the Eighth Circuit and elsewhere have held that circumstances similar to those in this case warrant dismissal on presumptive prejudice when the other *Barker* factors weigh in a defendant's favor. *See Shelton*, 820 F. Supp. 461 (two-years delay caused by the Government's negligence, demonstrated by its failure to check on the status of an unexecuted arrest warrant, warranted dismissal based on presumptive prejudice; no showing of actual prejudice was required); *United States v. Dowdy*, 2008 WL 2652271 (W.D. Mo. Oct. 10, 2008) (dismissing the indictment after the Government conceded negligence based on presumptive prejudice created by a five-year delay); *see also United States v. Seltzer*, 595 F.3d 1170 (10th Cir. 2010) (affirming a dismissal with prejudice of an indictment where the two-year delay was presumptively prejudicial, the case was not complex, and the Government failed to justify the delay); *United States v. Ingram*, 446 F.3d 1332 (11th Cir. 2006) (presumption of prejudice sufficient to dismiss the indictment where there was a two-year post-indictment delay and three of the *Barker* factors weighed in the defendant's favor). These cases alone suggest that the

---

[3] The Government further contends that dismissal is not warranted because courts have held a violation of § 3161(j) of the Speedy Trial Act, which sets forth the duties of an attorney for the Government in charging a person charged with an offense who is serving a term of imprisonment in any penal institution, does not warrant dismissal. *See United States v. Walker*, 255 F.3d 540, 542 (8th Cir. 2001) (". . . other courts have concluded that dismissal of an indictment is not an appropriate remedy for violations of § 3161(j)(1) . . . We agree."). As noted, however, Defendant is not alleging a violation of the Speedy Trial Act, but rather a violation of his constitutional right to a speedy trial. Therefore, those cases are not relevant to the analysis here.

dismissal of the indictment, with prejudice, based only on Defendant's showing of presumptive prejudice is an appropriate remedy. However, as discussed earlier, Defendant has also shown actual prejudice. As such, the Government's arguments do not convince the Court that dismissal is not warranted. Rather, given the *Barker* analysis and case law before it, the Court believes the only appropriate remedy is dismissal with prejudice. *See Barker*, 407 U.S. at 533 (". . . none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. . . . But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution."). Dismissal without prejudice would simply allow the Government to re-file charges against Defendant and, in the Court's mind, would run afoul the spirit of the Sixth Amendment right to a speedy trial.[4]

## IV. Conclusion

Therefore, for the reasons stated, it is hereby **RECOMMENDED** that Defendant's Motion, (Doc. 20), be **GRANTED**, and that this case be **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: November 20, 2015

---

[4] Additionally, the Government relies on two cases for its position that a presumptively prejudicial delay of 17-20 months does not warrant dismissal without a showing of actual prejudice. *See United States v. Clark*, 83 F.3d 1350 (11th Cir. 1996); *United States v. Beamon*, 992 F.2d 1009 (9th Cir. 1993). However, these cases are not binding on this Court and are distinguishable from the circumstances here. First, the defendants in *Clark* and *Beamon* were unable to make a showing of actual prejudice, which is not the case here. *Clark*, 83 F.3d at 1354; *Beamon*, 992 F.2d at 1014-15. Second, in both cases, valid arrest warrants were filed contemporaneously with the indictments, but law enforcement failed or only made half-hearted attempts to execute the warrants. *Clark*, 83 F.3d at 1352-53; *Beamon*, 992 F.2d at 1011-12. Here, Defendant was BOP custody when he committed the offense and remained in the continuous custody of the BOP for the duration of the 22-month delay. His location was easily ascertainable, and the only reason Defendant did not appear at an earlier time was because the prosecuting AUSA failed to file the proper paperwork. Therefore, even if they were binding authority, these cases not factually analogous to the circumstances here.